**WEDGEWORTH et al. v. POPE et al.** *
(No. 12040.)

Court of Civil Appeals of Texas. Fort Worth. Oct. 20, 1928.

On Rehearing, Nov. 24, 1928. Further Rehearing Denied Dec. 22, 1928.

---

*Writ of error refused.

1046

V. K. Wedgworth, of Fort Worth, for appellants.

Callaway & Wade, of Fort Worth, for appellees.

BUCK, J. On March 12, 1925, Fannie R. Wedgeworth, joined pro forma by her husband, V. K. Wedgeworth, filed suit in the seventeenth district court of Tarrant county to set aside a judgment and decree reviving a former judgment rendered against the said Fannie R. Wedgeworth, personally, for the sum of $1,208.95, with interest, which judgment was originally entered against the said Fannie R. Wedgeworth in the trial court on February 16, 1915. The cause was tried before the court without a jury, and on August 31, 1927, the court rendered judgment that plaintiffs take nothing by said proceeding to set aside the judgment of revivor against plaintiff Fannie R. Wedgeworth, and plaintiffs have appealed.

Opinion.

At the threshold, we conclude that the appeal should be dismissed, first, because the appeal bond filed by appellant is not made payable to the appellee, or to any one. The bond in part provides:

"Now, therefore, we, Fannie R. Wedgeworth and V. K. Wedgeworth, as principals, and ———, as sureties, acknowledge ourselves jointly and severally indebted and bound to pay the sum of three hundred ($300.-00) dollars, a sum at least double the amount of the probable amount of the costs of the suit as estimated by the clerk, conditioned that the said Fannie R. Wedgeworth shall prosecute this appeal with effect, and shall pay all the costs which have accrued in the court below," etc.

Article 2265, Rev. Civ. Statutes, provides that an appeal bond, to be given by appellant or plaintiff in error in the district or county court upon an appeal to a Court of Civil Appeals, shall be "payable to the appellee or defendant in error." The bond must be payable to every party to the judgment whose interest is adverse to that of appellant, although the judgment may not, in whole or in part, be in favor of such party. Young v. Russell, 60 Tex. 684; Greenwade v. Smith, 57 Tex. 195; Harvey v. Cummings, 62 Tex. 186; Ricker Lee & Co. v. Collins, 81 Tex. 667, 17 S. W. 378; Prusiecki v. Ramzinski (Tex. Civ. App.) 81 S. W. 549; Anderson v. Automobile Finance Co. (Tex. Civ. App.) 260 S. W. 1092. We think, for failure to make the bond payable to appellee, such bond is invalid, and that the appeal should be dismissed.

Secondly, it is urged that the bond is insufficient, in that it does not describe the judgment from which the appeal is taken. The judgment described in the bond is the judgment obtained in 1915, in which the First National Bank of Clarendon recovered a judgment personally against Mrs. Wedgeworth for the sum of $1,208.95. The judgment from which this appeal is taken is the judgment rendered on August 31, 1927, denying appellants the right to set aside the judgment of revivor against Mrs. Wedgeworth. The bond describes an entirely different judgment from the one from which relief is sought. We think the bond is defective in this respect.

Thirdly, objection is made to the bond, for the asserted reason that it was not filed in time. The order overruling the motion for rehearing and granting a motion to correct the judgment was made December 22, 1927. The bond shows to have been filed on January 9, 1928, but it was not approved by the clerk until January 27, 1928. If January 9, 1928, be taken as the date on which the bond was filed, then the bond was not a valid bond, inasmuch as it had not been approved by the clerk at that time. It must be reasonably conceded that January 27, 1928, is the correct date when the clerk approved the bond, because on that date L. J. Hawkins subscribed and swore to, before a notary public, proof of his competency as a bondsman. Only one other surety, besides Mr. Hawkins, signed the bond. If the bond was not signed by L. J. Hawkins until January 27th, it was an insufficient bond prior to that date, and was insufficient as an appeal bond. If the file date, as shown in the transcript, is not January 9th, but January 27th, then the bond was filed too late. See article 2092, § 31, Rev. Statutes of 1925. By this section, the bond should be filed within 30 days after the motion for new trial is overruled.

For the reasons stated, the motion to dismiss the appeal is granted, and the appeal is dismissed.

## On Rehearing.

It appearing that appellants have filed a new appeal bond in compliance with the statutes, said bond tendered is ordered filed.

This appeal is from a judgment of the seventeenth judicial district court of Tarrant county, denying the petition of Fannie R. Wedgeworth, joined pro forma by her husband, V. K. Wedgeworth, to set aside a judgment theretofore rendered in this cause, reviving the former judgment rendered in this cause against Mrs. Wedgeworth. The judgment of revivor, which this action seeks to set aside, was to revive a judgment theretofore entered in said court, by the terms of which J. B. Pope recovered from V. K. Wedgeworth and Fannie R. Wedgeworth, jointly and severally, on his cross-action, the sum of $1,233.-95, with interest from date of judgment at the rate of 10 per cent. per annum, together with all costs of suit.

## Opinion.

■ There is presented in appellants' brief a contention that the trial court had no jurisdiction to entertain the suit for revivor, inasmuch as the judgment of the Court of Civil Appeals of the Second Supreme Judicial District (see Wedgworth et ux. v. Pope et al., 196 S. W. 621) reversed the decision of the trial court and remanded the cause. The Supreme Court reversed our decision and remanded the cause to this court, with instructions to dismiss the appeal. The judgment of the Supreme Court was rendered May 26, 1920, but the costs were not paid in that court until August 15, 1921, and the mandate from the Supreme Court to this court was not issued until August 17, 1921. See Pope et al. v. Wedgeworth et ux. (Tex. Com. App.) 221 S. W. 950. It is urged, therefore, that the trial court lost jurisdiction of the cause of action, and could not entertain the motion for revivor, but could only dismiss the suit and judgment obtained therein theretofore.

Article 1775, Rev. Civ. Statutes of 1925, provides: "When a case is reversed and remanded, no mandate shall issue after twelve months from the rendition of final judgment of the Supreme Court, or the overruling of a motion for rehearing. When a cause is reversed and remanded by the Supreme Court, and the mandate is not taken out within twelve months as hereinbefore provided, then, upon the filing in the court below of a certificate of the Clerk of the Supreme Court or Court of Civil Appeals, that no mandate has been taken out, the case shall be dismissed from the docket of said lower court."

This article as it now exists is practically the same as article 1559, under the codification of 1914, in force at the time of the Supreme Court's action in this case, except that there follows, after the first and second use of the words "of Supreme Court," the words "or Court of Civil Appeals." Upon the remand-ing to this court, we followed the Supreme Court's direction, and dismissed the appeal, and issued our mandate to the trial court.

We do not think that article 1559 of 1914, now article 1775, has reference to a reversal and remanding of a cause by the Supreme Court to a Court of Civil Appeals, especially where the Supreme Court merely holds that the Court of Civil Appeals has no jurisdiction of the appeal, and remands the cause to the Court of Civil Appeals, with instructions to dismiss the appeal.

Article 1773, Rev. Civ. Statutes of 1925, provides, in part, that: "Mandates shall issue to the court in which the original judgment was rendered."

As further evidence that articles 1773 and 1775 do not refer to a mandate or direction issued by the Supreme Court to a Court of Civil Appeals, article 1773 provides: "The clerk of the Supreme Court shall not deliver a mandate until all costs of said court and of the Court of Civil Appeals shall have been paid, except as further herein provided."

Appellants cite three cases in support of this proposition, to wit: Gilmore v. Ladell (Tex. Civ. App.) 196 S. W. 362; Scales v. Marshall, 96 Tex. 140, 70 S. W. 945; Pevito v. Southern Gas & Gasoline Co. (Tex. Civ. App.) 187 S. W. 1009. The first case, from the Dallas Court of Civil Appeals, involved the issuance of a mandate by a Court of Civil Appeals to the trial court. Therefore this case is not pertinent to the matter now under discussion. The second case, Scales v. Marshall, also found in 96 Tex. 140, 70 S. W. 945, involved the issuance of a mandate by the Court of Civil Appeals to the trial court, and went to the Supreme Court on certified questions. This case does not involve the issuance of a mandate by the Supreme Court to the Court of Civil Appeals, nor the last case cited. Hence we conclude that the trial court properly overruled appellants' contention as to its jurisdiction.

■ Objection is made to the judgment of revivor, on the ground, apparently, that the judgment as returned in the lower court, which was sought to be reversed, was for "$12,008," whereas the judgment should have been for "$1,208." The original judgment, as it appears in the statement of facts, awarded a recovery to J. B. Pope against V. K. Wedgeworth and Mrs. Fannie R. Wedgeworth, jointly and severally, in the sum of $1,233.95, with interest at the rate of 10 per cent. per annum from date, and costs of suit. It appears that, subsequent to the rendition of the judgment, Pope remitted $25. So far as the statement of facts shows, there is no variance between the judgment sought to be revived and the one that was revived. In neither case was the judgment on its face void, and, if there was an error of the kind indicated, the trial court, in its inherent power, had authority to correct such a recital, under article 2229, Rev. Statutes, and we see no reason why he could not have done so. Certain-

ly, the judgment revived was for a much less amount than it is claimed that the judgment rendered was for. Hence the appellants have no cause for complaint.

Mrs. Wedgeworth pleaded that "she never was served with any citation, or notice of whatever kind in said motion for revivor, and that she did not appear therein, nor authorize or employ any one else to appear for her, and that she knew nothing of said motion or trial of revivor until about October, 1925, long after said judgment of revivor was entered, and after it was too late to appeal said cause, or go up on writ of certiorari (error), and that now more than 10 years have elapsed since the original rendition of said judgment on February 16, 1915, and that said judgment is now barred by the statute of ten years' limitation."

She testified as follows:

"I did not know anything about the suit brought here and tried in November, 1924, to revive a judgment against me. I did not know there had been any judgment had against me personally. I knew nothing about that. There was no citation served on me of a suit to revive a judgment against me by Mr. Pope. Up until the fall of 1925 I never did discuss with Mr. Wedgeworth any judgment or any suit against me to revive a personal judgment obtained by Mr. Pope against me. I had no knowledge up to that time of any such suit, or any such judgment. No sheriff or other officer served any writ or paper or citation on me about that time; he never did. He never left any paper for me to my knowledge. No; I am sure that I did not get any citation or paper left by any officer along about that time. I did not know anything about any such citation. It has been very recently that I discovered Mr. Pope had some sort of judgment against me personally. Oh, yes; I know it now. I brought this suit to get whatever credit I could on that judgment, and that is the purpose of this suit."

On cross-examination she testified in part as follows:

"Yes; I did state, in answer to Mr. Curtis' question, that this proceeding was for the purpose of getting a credit on the judgment against me. That is the purpose of this proceeding, as far as I know. I guess the only purpose of this proceeding is to set aside a judgment formerly rendered. Mr. Wedgeworth told me rather recently that in this proceeding here the court could not enter any credit on my judgment. He told me that within the last few weeks; I could not tell you just how long ago. I knew it to be a fact that this was a proceeding to get that credit, as I stated to Mr. Curtis. If it should appear that it was not in fact such a proceeding, I suppose I would then be mistaken.

"I do not know whether I have read the petition that my husband and I filed, or not. I read some papers. I do not know whether I read that or not. I am afraid I do not know a petition from anything else. Yes, sir; I filed here a petition in this case to set aside a judgment. I expect I did read that petition. I think maybe I did. I read something, and I guess that was it. I am a pretty busy woman. Go on; what else do you want to know? I think I read it. I guess I did swear to the facts in it, if it is signed by me. If you will show me the paper, I will see whether I read it or not. If it has my name signed to it, I read it. I will have to get out my glasses. Yes; I read it."

V. K. Wedgeworth testified in substance that he did not tell his wife anything about the revivor proceedings; that she did not appear in court at the time of the trial therein, and that he had no authority to represent her in court; that the sheriff, or deputy sheriff, came to his office, and threw two citations on his desk, and said, "There is a citation for you and your wife;" and he asked if it was all right for him to leave them there, and he did leave both citations there. That witness did not know that the court had overruled his motion for new trial in the revivor proceedings until it was too late to appeal, and that he then told his wife about the revivor proceeding against her. On cross-examination the witness stated that he had been married to his wife for 25 years at the time the motion to revive was filed; he was living with her in the city of Fort Worth and that he lived with her during all the time of the revivor proceedings, and was still living with her on friendly relations; that in the revivor proceedings he filed an answer on behalf of his wife, he being a practicing attorney, knowing at the time that his wife had not been served with citation; that he did not call this fact to the attention of the court, however, and made no objection on that ground during the course of the entire proceedings; that he did not know until after the revivor proceedings were ended that there was a personal judgment against his wife, entered in 1916, although he and his wife appealed from the judgment rendered in the case, and the cause finally went to the Supreme Court of Texas. He said: "I don't think I knew that until after my motion for a new trial"—referring to the motion for new trial in the revivor proceedings. He admitted, however, that in the revivor proceedings he not only filed an answer as attorney for himself and Fannie R. Wedgeworth, but swore to the same, and that said answer stated in substance that any judgment rendered against Fannie R. Wedgeworth was void, for the reason that she was a married woman, and other reasons set forth in the answer, and that the answer contained the following: "Wherefore the said Fannie R. Wedgeworth prays that said judgment be not revived as against her, but that same be declared null and void, and that said cause be dismissed as to her, and that she go hence with her costs."

Wedgeworth further admitted that he argued in the court all the questions raised by the answer, and that Judge Speer, the opposing counsel, argued in court the question of

reviving the judgment against Fannie R. Wedgeworth. He admitted, however, that in the answer in the revivor proceedings there was no judgment against Mrs. Wedgeworth personally, although he knew that, if true, such would be a complete defense. He admitted that he set out the fact that she was not personally responsible, for the purpose of defeating any kind of judgment that might exist against the witness. He admitted that on behalf of his wife he presented all of her defenses, except that contained in a certain deed, but that this was the same deed mentioned in the answer filed in the revivor proceedings.

■ The return of the officer showed that the citations had been served upon both V. K. Wedgeworth and Mrs. Fannie R. Wedgeworth. We think it is pretty well established that evidence tending to impeach an officer's return must be conclusive and convincing, and not, like the ordinary issue of fact, determined by a mere preponderance of the testimony. In the case of West v. Dugger, 278 S. W. 241, by the Court of Civil Appeals at Waco, the court said: "It is the law in this state that the return of an officer on a citation, showing proper service, may not be impeached by the testimony of one witness, unless strongly corroborated by other evidence"—citing cases.

In Harrison v. Sharpe, 210 S. W. 731, writ of error refused, the Amarillo Court of Civil Appeals said: "If the independent facts and circumstances, taken all together, are, 'in the opinion of both the court and the jury, strong, that is, cogent, powerful, forcible, calculated to make a deep or effectual impression upon the mind,' then the direct testimony may be said to be 'strongly corroborated.' Hernandez v. State, 18 Tex. App. 134, 51 Am. Rep. 295. We think the trial court was justified in concluding that the testimony of Mrs. Sharpe that she was not served with citation was strongly corroborated." See, also, Crawford v. Gibson (Tex. Civ. App.) 203 S. W. 375, writ of error refused.

■ After considering in detail the testimony offered by appellants in the court below, to show that Mrs. Wedgeworth was not served with notice and citation of the revivor suit, we are of the opinion that the trial court did not err in rendering judgment against said appellants.

The fourth proposition is that, in Pope's cross-action in the original suit, his pleadings alleged merely that V. K. Wedgeworth and Mrs. Fannie R. Wedgeworth, for a valuable consideration, executed and delivered to defendant their two certain promissory notes of even date, and did not allege that the notes were for the separate estate of Mrs. Wedgeworth; that hence no allegation was made sufficient to justify a judgment against Mrs. Wedgeworth individually; hence, that said judgment against her was unauthorized, and that she should have relief in this action. It was claimed that a $1,750 credit allowed by the court in the revivor judgment against Wedgeworth alone should be applied as a credit on the judgment against Mrs. Fannie R. Wedgeworth. The deed from the Wedgeworths to J. B. Pope provided : "It is further agreed and stipulated that J. B. Pope shall allow as credits on the aforesaid notes all and any moneys received by him from said judgment in the case of Pope v. Beauchamp et al., on or before the 1st day of August, 1914, but not thereafter."

■ There are no allegations in appellants' petition in this case that anything was collected on said judgment prior to said August 1, 1914. Wedgeworth testified that the $3,000 Beauchamp note was put up as security to Pope for $1,500; that he gave this deed to Pope, and that it contained the aforesaid provision with reference to moneys collected on the Beauchamp judgment, judgment having been obtained on the $3,000 note. The failure of the trial court to correct and modify the original judgment on the revivor suit is not a matter that we can consider, where the trial court refused to set aside the revivor judgment. There must have been sufficient evidence to justify the trial court to set aside the judgment in the revivor suit before this question would become pertinent. We think that the trial court was correct in deciding that the evidence to set aside the revivor suit was insufficient. We think, under the undisputed evidence, that the $1,750 credit ought to have been credited on the judgment against Wedgeworth alone. The trial court, in the revivor proceedings, decided, after full argument and presentation of authorities, and with a full understanding of the facts, that said credit should be applied on the judgment against Wedgeworth alone, and not against him and his wife, jointly and severally.

We think we have discussed the questions which are pertinent to this appeal. All assignments are overruled, and the judgment is affirmed.